**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LACY R. WHEELER, III** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **No. 10-2022** |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **LABOR AND INDUSTRY** | : | |

**NORMA L. SHAPIRO, J.**                                    **MARCH 29th, 2012**

**MEMORANDUM**

Plaintiff Lacy R. Wheeler, III ("Wheeler") brings claims against his former employer, defendant Commonwealth of Pennsylvania Department of Labor and Industry (the "Department"), for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. Before the court is the Department motion for summary judgment. Wheeler has proceeded *pro se*. The court is patient with *pro se* litigants, but Wheeler, an attorney, has pursued his claims in a dilatory manner.[1]

The court has federal question jurisdiction under 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391.

Wheeler, an African-American attorney employed by the Department, filed a complaint alleging the Department: (1) failed to promote him because of his race; and (2) terminated him

---

[1]Wheeler failed to appear for the final pretrial conference and oral argument on the motion for summary judgment, so the court will decide the motion on the papers. He submitted his pretrial memorandum six weeks late and the memorandum did not comply with the court's pretrial order and the requirements of Local Rule 16.1(c). He did not seek leave of the court to file his pretrial memorandum late until a week after filing the pretrial memorandum.

and engaged in other post-termination retaliatory acts when he filed complaints alleging race

and age discrimination with the Pennsylvania Office of Equal Opportunity ("OEO") and United

States Equal Employment Opportunity Commission ("EEOC").  Wheeler brought claims under

Title VII, 42 U.S.C. § 1981, and the Pennsylvania Humans Relations Act ("PHRA") against the

Department and three Department employees: Edward Rawlings ("Rawlings"), James

Wilderman ("Wilderman"), and Stephen Schmerin.

By Order of November 15, 2010, the court dismissed the § 1981 and PHRA claims

against all defendants, and the Title VII claims against the individual defendants.  The Title VII

claims against the Department are the only remaining claims.  Wheeler seeks: (1) compensatory

damages for pain and suffering, physical and emotional distress, and past and future economic

losses; (2) declaratory relief that the Department's discriminatory practices are unlawful; (3) an

injunction prohibiting the Department from engaging in discriminatory practices; (4) lost wages

and benefits; (5) pre- and post-judgment interest, costs, and attorney's fees; and (6) any other

relief deemed just and proper.[2]

The court will grant the Department motion for summary judgment because there is not

sufficient evidence for a jury to return a verdict in Wheeler's favor.

## I.    Background

Wheeler was employed as an Unemployment Compensation Appeals Referee ("appeals

referee") with the Unemployment Compensation Appeals Board of Review from September 15,

---

[2]By Order of November 15, 2010, the court denied the request for punitive damages under Title VII.  "A complaining party may recover punitive damages under this section against a respondent *(other than a government, government agency* or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1) (emphasis added).

2003 until he was terminated on January 30, 2008.  On May 24, 2007, Wheeler submitted an application for promotion to the position of Eastern Appeals Referee Program Manager ("program manager").  Seven candidates applied for the position; four, including Janice Cohen ("Cohen"), were Caucasian and three, including Wheeler, were African-American.

The candidates were interviewed for the position of program manager by three Department employees: Autro Heath ("Heath") and former defendants Rawlings and Wilderman.  Cohen received an overall rating of "Strong" by all three reviewers, each of whom identified Cohen as the best candidate for the position.  Mot. Summ. J., Ex. B.  Wheeler received an overall rating of "Strong" by Wilderman and "Acceptable" by Rawlings and Heath. Mot. Summ. J., Ex. C.  At least one of the reviewers, Wilderman, expressed concern in his review about Wheeler's proposal to implement a workplace policy allowing appeals referees to leave the office early on completion of more than seven hearings in one day.   Mot. Summ. J., Exs. C, D.  Rawlings also avers the reviewers were concerned about the proposal.   Mot. Summ. J., Ex. A, ¶ 18.

After the interviews, Cohen was promoted to the position of program manager.  Wheeler alleges he was more qualified than Cohen but was not promoted to program manager because of his race.  Wheeler also alleges the Department has never promoted an African-American to program manager.  Wheeler claims the Department settled two prior federal actions brought by African-American employees who claimed they were not promoted to program manager because of their race.

On September 4, 2007, Wheeler submitted an internal complaint to the OEO alleging

race discrimination in the failure to promote him to program manager.[3]  The OEO dismissed the complaint after conducting an internal investigation.  Wheeler then filed a complaint with the EEOC on December 27, 2007.  On January 16, 2008, the Department held an internal fact-finding conference with Wheeler to discuss information discovered during the OEO internal investigation.  The OEO had discovered Wheeler listed his attorney identification number when he applied for the position of appeals referee, even though his law license was in suspense.  The OEO had also discovered Wheeler claimed to have no criminal history in his applications for both appeals referee and program manager, despite having been arrested, held in direct criminal contempt, and incarcerated on at least two occasions.

The Department terminated Wheeler on January 30, 2008.[4]  He commenced this action after the EEOC "issued Notices of Right to Sue on February 4, 2010."  Compl. ¶ 3.  He alleges his termination was in retaliation for filing the OEO and EEOC complaints.

## II.   Legal Standard

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   The court must view the facts in the light most favorable to the nonmoving party and make all reasonable inference's in that party's favor.  *See Hugh v. Butler Cnty. Family*

---

[3]Wheeler amended his OEO complaint to include a charge of age discrimination.  He did not bring a claim for age discrimination in this action.

[4]In his response to the motion for summary judgment, Wheeler claims the Department violated his due process rights when it terminated his employment without providing a hearing as required by *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).  On December 1, 2010, Wheeler moved to amend his complaint to include due process claims under the Fifth and Fourteenth Amendments.  The court denied the motion without prejudice because the due process claims were barred by the Eleventh Amendment.

*YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The movant must identify those portions of the record showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant does not bear the burden of persuasion, it may show the nonmovant's evidence is insufficient to carry the burden of persuasion. *Id.* at 323. To withstand summary judgment, the nonmovant must show a genuine dispute of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A dispute is "genuine" only if there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**III.    Discussion**

Title VII makes it unlawful for an employer to:

> [F]ail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or nation origin; or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. §§ 2000e-2(a)(1), (2). Title VII also prohibits employers from discriminating against an employee or applicant who has opposed an unlawful employment practice or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing

under this subchapter."  42 U.S.C. § 2000e-3(a).

Wheeler asserts four theories of liability under Title VII: (1) individual disparate treatment (42 U.S.C. § 2000e-2(a)(1)); (2) systemic disparate treatment (42 U.S.C. § 2000e-2(a)(1)); (3) disparate impact (42 U.S.C. § 2000e-2(a)(2)); and (4) retaliation (42 U.S.C. § 2000e-3(a)).[5]

### A.    Individual Disparate Treatment

Wheeler alleges the Department committed an affirmative act of racial discrimination when it promoted Cohen to program manager, even though Wheeler was more qualified for the position.  Compl. ¶ 16.  Wheeler alleges the Department promoted Cohen because of racial bias against Wheeler.  Compl. ¶ 85.

An action for individual disparate treatment under Title VII arises when an employer has "treated [a] particular person less favorably than others because of the plaintiff's race, color, religion, sex, or national origin."  *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985-86 (1988).  "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000).  Wheeler may sustain his individual disparate treatment claim by offering: (a) direct evidence of discrimination; or (b)

---

[5]Wheeler failed to assert clearly specific claims or counts in his complaint.  A liberal reading of the complaint could find Title VII claims based on theories of individual disparate treatment, retaliation, systemic disparate treatment, and disparate impact.  The motion for summary judgment does not address the theory of systemic disparate treatment, but Wheeler's response addresses all four theories.  In the OEO complaint, filed prior to his termination, Wheeler included allegations that could be based on all theories save retaliation.  Mot. Summ. J. Ex. E.  The record does not show which theories of liability were included in the EEOC complaint, but the Department has not raised failure to exhaust administrative remedies as a defense.  The court will consider all four theories of potential liability under Title VII.

circumstantial evidence of discrimination under the three-step burden-shifting procedure set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Direct evidence of racial discrimination must demonstrate the "decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989), *superseded on other grounds by statute as recognized in Robinson v. Se. Pa. Transp. Auth., Red Arrow Div.*, 982 F.2d 892, 899 n.8 (3d Cir. 1993). Wheeler does not offer direct evidence that the decision to promote Cohen instead of Wheeler was motivated by racial bias. Nothing in the record shows race was a factor in the decision to promote Cohen.

Wheeler may also prove his individual disparate treatment claim with circumstantial evidence under the three-step burden-shifting procedure set forth in *McDonnell Douglas*:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802, 804).

To present a prima facie case, Wheeler must show: (1) he belongs to a protected class; (2) he was qualified for the position in question; (3) he was subjected to an adverse employment action; and (4) under circumstances giving rise to an inference of discrimination, the employer favored an individual not of the protected class to fill the position. *See Sarullo v. United States*

7

*Postal Serv.*, 352 F.3d 789, 797-98 (3d Cir. 2003).  The focus of the prima facie test is "whether the employer is treating 'some people less favorably than others because of their race.'" *Id.* at 798 (citation omitted).  "The burden of establishing a prima facie case of disparate treatment is not onerous."  *Burdine*, 450 U.S. at 253.

Wheeler, an African-American, is a member of a protected class.  *See McDonnell Douglas*, 411 U.S. at 802.  The reviews from Wheeler's interview for program manager show he was qualified for the position.  The reviewers rated Wheeler as "Acceptable" or "Strong" across a broad range of categories.   Mot. Summ. J., Ex. C.  The materials that Wheeler submitted in his application further show his qualifications.  Mot. Summ. J., Ex. D.  Wheeler received favorable annual reviews for at least two of his years as an appeals referee.  *Id.* Wheeler also received high scores on at least two quality review evaluations.  *Id.*

The parties agree the Department promoted Cohen, a Caucasian, instead of Wheeler. The issue is whether the decision to promote Cohen occurred under circumstances giving rise to an inference of discrimination.  Wheeler contends racial discrimination influenced the promotion of Cohen because Wheeler was more qualified for the position.  Compl. ¶ 16.  It is permissible for the court to infer discrimination from a comparison between Wheeler and a single person outside his protected class.  *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 646 (3d Cir. 1998).

Wheeler contends multiple factors demonstrate his superior qualification for program manager: (1) experience in management; (2) experience as a practicing attorney and academic; (3) history of accepting extra assignments beyond his regularly scheduled caseload, including assignments requiring travel to other Department offices; (4) union and committee involvement;

(5) interpersonal skills; and (6) superior application package.  Compl. ¶¶ 23-30, 36-38, 41-42, 45, 75-76.  Wheeler contends Cohen, by comparison: (1) had limited or no managerial and legal experience; (2) rarely if ever accepted extra assignments; (3) did not engage in committee work; and (4) lacked interpersonal skills.  Compl. ¶¶ 31-34, 39-40, 43-44.  Wheeler also claims Cohen accepted a demotion from the position of Deputy Counsel at the Civil Service Commission to appeals referee.  Compl. ¶ 46.  The court, viewing the evidence in the light most favorable to Wheeler, will assume Wheeler has established a prima facie case.

The prima facie case gives rise to a presumption of discrimination.  The Department can rebut the presumption by offering evidence that it had a legitimate, non-discriminatory reason for promoting Cohen instead of Wheeler.  *See McDonnell Douglas*, 411 U.S. at 802.  The Department contends it promoted Cohen instead of Wheeler because: (1) she was the highest rated candidate by the reviewers; (2) her answers were better organized; (3) she showed a better understanding of the subject matter; and (4) the reviewers were concerned about Wheeler's proposal that appeals referees be permitted to leave the office early on completion of more than seven hearings in one day.

The Department supports its legitimate, non-discriminatory reason with record evidence. *See* Mot. Summ. J., Exs. B and C.  The Department produced interview reviews showing that Cohen received an overall rating of "Strong" by all three reviewers, each of whom identified Cohen as the best candidate for the position.   Mot. Summ. J., Ex. B.  Rawlings avers "Cohen's answers were better organized and showed a better understanding of the subject matter than the answers provided by Mr. Wheeler."   Mot. Summ. J., Ex. A., ¶ 17.  Wheeler, by comparison, received an overall rating of  "Strong" by only one reviewer and "Acceptable" by two reviewers.

Mot. Summ. J., Ex. C. At least one of the reviewers, Wilderman, expressed concern about Wheeler's proposal to implement a workplace policy allowing appeals referees to leave the office early on completion of more than seven hearings in one day. Mot. Summ. J., Exs. C, D. Rawlings also avers the reviewers were concerned about Wheeler's proposal. Mot. Summ. J., Ex. A, ¶ 18. Rawlings further avers he "did not make any decision on the basis of Mr. Wheeler's race." *Id.* at ¶ 56. The Department has satisfied its burden of offering evidence of a legitimate, non-discriminatory reason for promoting Cohen instead of Wheeler.

The burden shifts to Wheeler to offer evidence creating a triable issue whether the Department's reason for promoting Cohen instead of Wheeler was a pretext for racial discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993). A sufficient showing of pretext must "allow the factfinder reasonably to infer that each of the employer's proffered nondiscriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Fuentes v. Perkasie*, 32 F.3d 759, 764 (3d Cir. 1994).

Wheeler makes several arguments in support of his claim that the Department promoted Cohen for pretextual reasons. Wheeler contends his failure to be promoted despite being the most qualified candidate is evidence that the Department did not promote him for discriminatory reasons. Even if Wheeler were more qualified than Cohen, he may not establish pretext by simply showing the Department's decision was wrong or mistaken. *Id.* at 765. The issue is whether the Department acted in a discriminatory manner. *Id.* Wheeler has failed to offer evidence showing the Department acted with discriminatory intent.

Wheeler questions the authenticity of the interview reviews submitted by the

Department.  Wheeler may not rely on mere allegations, general denials, or vague statements.

See *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991).  Rawlings avers the interview

reviews "are true and complete copies of the ratings that were completed by the three reviewers

on the interview panel."  Mot. Summ. J., Ex. A, ¶ 11.  Each review is dated August 1, 2007, and

Wheeler has not offered any evidence, beyond his own allegation, calling into doubt the

authenticity of the Department records.  *See*  Mot. Summ. J., Ex. C.  The interview reviews

would be admitted at trial and are considered in deciding a motion for summary judgment.

Wheeler alleges two former African-American Department employees were also denied

promotions because of their race.  Compl. ¶¶ 52, 57.  Wheeler may show the Department

discriminated against other persons within his protected class as evidence that discrimination

was more likely than not a motivating or determinative factor in the decision not to promote

him.  *See Simpson*, 142 F.3d at 645.  Although the Department acknowledges having settled

racial discrimination lawsuits filed by both former employees, *see* Answer ¶¶ 56, 61, the record

does not reflect any information about those lawsuits and settlements.

Wheeler does not offer evidence creating a triable issue whether the Department's

reason for promoting Cohen instead of Wheeler was a pretext for unlawful racial discrimination.

Wheeler cannot prove his individual disparate treatment claim with direct evidence or by

showing pretext; the individual disparate treatment claim cannot withstand summary judgment.

### B.      Systemic Disparate Treatment

Wheeler alleges the Department has a "long-standing pattern and business practice" of

intentionally excluding African-American employees from the position of program manager.

Compl. ¶¶ 18, 51.  Wheeler also alleges the Department has a "policy to hire a less qualified

white female as a member of a 'protected class' in an attempt to exclude members of the 'protected class' of African-American candidates and thus maintain the desired 'all white' managerial ranks."  Compl. ¶ 17.

To present a claim of systemic disparate treatment, Wheeler must show the Department intentionally had a pattern or practice of discriminating against a protected group.  *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977).  Wheeler has not offered direct evidence of a discriminatory pattern or practice by the Department.

Wheeler can meet his burden of proof with two kinds of circumstantial evidence to establish the existence of a pattern or practice of intentional discrimination: (1) statistical evidence establishing the Department's past treatment of the protected group; and (2) testimony from protected class members detailing specific instances of discrimination.  *See id*. at 337-39. Wheeler offers neither statistical evidence nor testimony to establish a prima facie case of systemic disparate treatment.  Wheeler alleges the Department employed an arbitrary and capricious "pre-textual point system" to eliminate qualified African-Americans from the position of program manager for the last twenty-five years.  *See* Compl. ¶¶ 71-73; Resp. Mot. Summ. J. pp. 16-18.  Wheeler also alleges the litigation between the Department and two former employees in racial discrimination actions evidences the Department's systematic exclusion of African-Americans from management.  *Id.* at 17-18.

Wheeler does not offer any evidence in the record to support his allegations.  Wheeler cannot present a prima facie Title VII claim under a systemic disparate treatment theory by relying on mere allegations and vague statements.  *See Quiroga*, 934 F.2d at 500.  Wheeler has failed to create a genuine dispute of material fact that the Department has a pattern or practice of

discriminating against African-Americans; the systemic disparate treatment claim cannot

withstand summary judgment.

### C.      Disparate Impact

Wheeler's claim that the Department employed an arbitrary and capricious "pre-textual

point system" to eliminate qualified African-Americans from the position of program manager

could also assert a disparate impact theory of liability.[6]

A prima facie case of disparate impact discrimination has two components.  First,

Wheeler must identify "the specific employment practice that is challenged."  *Watson*, 487 U.S.

at 994.   Second, Wheeler must show the Department practice "causes a disparate impact on the

basis of race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(k)(1)(A)(I).  Unlike

a Title VII claim alleging systemic disparate treatment, which requires a plaintiff to show an

employer's discriminatory intent behind a practice or policy, a Title VII claim alleging disparate

impact discrimination must show "a facially neutral standard has caused a 'significantly

discriminatory hiring pattern.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464,

476 (3d Cir. 2011) (citation omitted); *see also Stagi v. Nat'l R.R. Passenger Corp.*, 391 Fed.

Appx. 133, 136 (3d Cir. 2010) (unpublished).  "To show causation, the plaintiff must present

'statistical evidence of a kind and degree sufficient to show that the practice in question has

caused exclusion of applicants for jobs or promotions because of their membership in a

protected group.'"  *Stagi*, 391 Fed. Appx. at 136 (citation omitted).  The "statistical disparities

must be sufficiently substantial that they raise such an inference of causation."  *Watson*, 487

_____

[6]Wheeler does not clarify whether he alleges Title VII liability under a systemic disparate
treatment theory, disparate impact theory, or both.  Although the motion for summary judgment does not
address systemic disparate treatment, Wheeler responds to the motion for summary judgment on both
grounds, so the court will address each theory.

U.S. at 994-95.

Wheeler has failed to offer evidence, statistical or otherwise, showing the Department has a specific neutral employment practice excluding African-Americans from promotion. Wheeler contends the two prior racial discrimination lawsuits against the Department and the Department's failure to promote ever an African-American to program manager should have put the Department on notice of the discriminatory impact of its promotion practices.  Compl. ¶¶ 48-50, 62.  Wheeler fails to cite facts of record concerning the prior lawsuits.  Wheeler also fails to offer statistical evidence concerning the number of prior program manager applicants, their ethnicities, or the results of their applications, aside from the six other candidates considered for program manager together with Wheeler.  The promotion of one Caucasian (Cohen) instead of three other Caucasians and three African-Americans does not, by itself, support an inference that the Department has a practice excluding African-Americans from promotion.  *See, e.g.*, *Verney v. Dodaro*, 872 F. Supp. 188, 194-95 (M.D. Pa. 1995) (a single report concluding defendant had a low percentage of female employees was insufficient to establish a prima facie disparate impact claim).

Wheeler does not offer evidence creating a genuine dispute of material fact that the Department has a neutral employment practice with discriminatory impact.  Wheeler cannot present a prima facie Title VII claim under a disparate impact theory; the disparate impact claim cannot withstand summary judgment.

### D.    Retaliation

Wheeler alleges the Department retaliated against him for filing racial discrimination complaints with the OEO and EEOC by: (1) terminating him; (2) filing a complaint against him

with the Disciplinary Board of the Supreme Court of Pennsylvania ("PA Disciplinary Board")

after he was terminated; and (3) filing a complaint against him with the Pennsylvania State Civil

Service Commission ("PA Commission") after he was terminated.  Compl. ¶¶ 101, 129, 131.[7]

Although Wheeler's claim that the Department did not promote him because of racial

discrimination fails to withstand summary judgment, he may still bring an action for retaliation

under Title VII.  *See Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 69-70

(2006).  Wheeler can establish a retaliation claim without proving the underlying discrimination

claim that gave rise to the retaliation.  *Id.*  Wheeler may also recover if the Department engaged

in post-termination retaliation when it filed the PA Disciplinary Board and PA Commission

complaints.  *See Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 200 (3d Cir. 1994). "[A]n ex-

employee may file a retaliation action against a previous employer for retaliatory conduct

occurring after the end of the employment relationship when the retaliatory act is in reprisal for

a protected act within the meaning of section 704 [of Title VII] and arises out of or is related to

the employment relationship."  *Id.*

Wheeler does not offer direct evidence that the Department terminated him and filed the

PA Disciplinary Board and PA Commission complaints in retaliation for the OEO and EEOC

complaints.

To present a prima facie case of retaliation with circumstantial evidence, Wheeler must

show: (1) he engaged in a protected employee activity; (2) he was subject to adverse action by

the Department, either subsequent to or contemporaneous with the protected activity; and (3)

there was a causal connection between the protected activity and adverse action.  *See Fogelman*

---

[7]The PA Disciplinary Board and PA Commission complaints were dismissed without any action taken against Wheeler.  Resp. Mot. Summ. J., Exs. 5, 7.

*v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002). "An employer's actions are considered retaliatory when, in response to an employee's charge of discrimination, the employer takes actions that would '[dissuade] a reasonable worker from making or supporting a charge of discrimination.'" *Lee v. City of Phila.*, 2008 WL 2697320, at *3 (E.D. Pa. July 3, 2008) (quoting *Burlington*, 548 U.S. at 68).

The OEO and EEOC complaints are protected activity under Title VII, 42 U.S.C. § 2000e-3(a). *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989). Wheeler's termination and the PA Disciplinary Board and PA Commission complaints are adverse actions subsequent to his filing the OEO and EEOC complaints.

The court can infer a causal connection between the OEO and EEOC complaints and the Department's allegedly retaliatory actions because of their temporal proximity. "In certain narrow circumstances, an 'unusually suggestive' proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007); *compare Jalil*, 873 F.2d at 708 (two days between protected activity and adverse action sufficient to present prima facie case), *with Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) (nineteen months between protected activity and adverse action insufficient to present prima facie case). "It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997).

Wheeler filed the OEO complaint on September 4, 2007. Mot. Summ. J., Ex. E. He

received notice of the internal fact-finding conference by memorandum dated December 13, 2007.  Mot. Summ. J., Ex. M.  Wheeler claims he filed the EEOC complaint on December 27, 2007.  Compl. ¶ 100.  The internal fact-finding conference occurred on January 16, 2008 and the Department terminated Wheeler on January 30, 2008.  Resp. Mot. Summ. J., Ex. 16.  Wheeler was terminated less than five months after filing the OEO complaint and approximately one month after filing the EEOC complaint.  The court, viewing the evidence in the light most favorable to Wheeler, assumes the Department terminated Wheeler in close temporal proximity to the filing of the OEO and EEOC complaints.

The record does not show the precise dates when the Department filed the PA Disciplinary Board and PA Commission complaints.  Wheeler claims the PA Disciplinary Board complaint was filed on or about March 1, 2008.  Compl. ¶ 129.  The PA Disciplinary Board dismissed the complaint by letter dated March 27, 2008.  Resp. Mot. Summ. J., Ex. 5.  The Department filed the PA Commission complaint after January 16, 2008, and before May 19, 2008.  Resp. Mot. Summ. J., Ex. 6.  The court will assume the Department filed complaints with the PA Disciplinary Board and PA Commission in close temporal proximity to the filing of the OEO and EEOC complaints.

This would allow an inference of a causal connection between the OEO and EEOC complaints and the Department's allegedly retaliatory actions.  Wheeler has presented a prima facie case of retaliation.

The Department contends it terminated Wheeler and filed the PA Disciplinary Board and PA Commission complaints for non-discriminatory reasons, *i.e.*, because Wheeler made false and misleading statements on his applications for appeals referee in 2002 and program manager

in 2007.  After Wheeler filed the OEO complaint, the Department conducted an internal

investigation to determine whether racial discrimination was a factor in evaluating his

promotion application.  The Department discovered he made false and misleading statements in

his applications concerning his law license and criminal history.

The Department discovered Wheeler listed his Pennsylvania bar identification number

on his employment application for appeals referee, even though his law license was in suspense

when he applied.  Mot. Summ. J., Ex. G.  On May 6, 1997, the Supreme Court of Pennsylvania

had suspended Wheeler from the bar for a year and a day.  Mot. Summ. J., Ex. K.  On April 26,

2001, the Disciplinary Board for the Supreme Court of Pennsylvania denied Wheeler's petition

for reinstatement because he had resisted arrest and been incarcerated for criminal contempt

during his period of suspension.  *Id.*

The appeals referee application instructions stated that one of the qualifications an

applicant may show to obtain the position is "certification of admission to the Bar of the

Supreme Court of Pennsylvania."  Mot. Summ. J., Ex. F.  In his application, dated July 30,

2002, Wheeler wrote "Attorney ID# 41015" in the section of the application requesting

"LICENSES OR CERTIFICATES WHICH DIRECTLY RELATE TO THE QUALIFICATIONS OF THE JOB

TITLE(S) FOR WHICH YOU ARE APPLYING (Give numbers and expiration dates)."  *Id.*  The

Disciplinary Board for the Supreme Court of Pennsylvania did not reinstate Wheeler's law

license until May 2, 2003, more than nine months after Wheeler applied to be an appeals

referee.  Mot. Summ. J., Ex. L.  Wheeler admits his law license was in suspense when he

completed the appeals referee application.  Resp. Mot. Summ. J., p. 2.

The Department also discovered Wheeler claimed to have no criminal history in his

applications for both appeals referee and program manager, but had been arrested, held in direct criminal contempt, and incarcerated on at least two occasions.  The appeals referee application asked whether the applicant had ever been convicted of a criminal offense, other than minor traffic violations and juvenile offenses.  Mot. Summ. J., Ex. G.  The program manager application asked whether the applicant had ever been convicted of a criminal offense, defined to include "summary offenses" and defined as "an adjudication of guilt and includes determinations before a court, a district judge or magistrate . . . that result in a fine, sentence or probation."  Wheeler checked the box marked "NO" is response to both questions.  Mot. Summ. J., Exs. G, H.

On May 14, 1993, Judge Mazur had sentenced Wheeler to one year of incarceration for three charges of direct criminal contempt in a child support action filed against Wheeler in the Court of Common Pleas of Allegheny County, Pennsylvania, Family Division.  Mot. Summ. J., Ex. I.  On June 17, 1998, Judge Baer had sentenced Wheeler to one month of incarceration for direct criminal contempt in the same action.  Mot. Summ. J., Ex. J at 34:11-35:8.  Judge Baer found Wheeler in direct criminal contempt after hearing testimony that Wheeler had been held in contempt on at least five other occasions, arrested three times, and resisted arrest.  Mot. Summ. J., Ex. J.

Wheeler misled the Department when he listed his Pennsylvania bar identification number on his appeals referee application.  He provided false information on his appeals referee and program manager applications when he claimed he did not have any criminal history.  The Department has satisfied its burden of production with evidence of legitimate reasons for terminating Wheeler and filing the PA Disciplinary Board and PA Commission complaints

based on his allegedly false and misleading statements in his applications.

 The burden shifts to Wheeler to offer evidence creating a triable issue of fact on whether the Department's reasons for terminating Wheeler and filing the PA Disciplinary Board and PA Commission complaints were pretextual.  *See Atkinson v. N. Jersey Developmental*, 2011 WL 6000713, at *4 (3d Cir. Dec. 1, 2011).  Temporal proximity alone is not sufficient to show pretext.  *See Carlson v. Twp. of Lower Alloways Creek*, 2011 WL 4493571, at *6 (3d Cir. Sept. 29, 2011).  Wheeler contends he did not provide false and misleading information on his applications because the appeals referee application did not require him to be an active member of the bar and he did not have a criminal background.  Wheeler also questions the Department's motive in conducting an investigation into the OEO complaint that extended to a review of the appeals referee employment application.

 Wheeler misled the Department by listing his Pennsylvania bar number when his license was in suspense.  There is no merit to his argument that he did not state his license was "suspended" because the application only asked for date of "expiration."  Resp. Mot. Summ. J., p. 2.  The onus was not on the Department to investigate whether the license number listed was active.

 Although Wheeler's Pennsylvania State Police and Federal Bureau of Investigation background checks did not show a criminal history, Wheeler had a criminal history when he completed the appeals referee and program manager applications.  Resp. Mot. Summ. J., Exs. 1, 2.  "The trial court is empowered to punish as direct criminal contempt the misbehavior of any person that takes place in the presence of the court, thereby obstructing the administration of justice [under] 42 Pa. Stat. Ann. § 4132(3)."  *Commonwealth v. Ashton*, 824 A.2d 1198, 1202

(Pa. Super. Ct. 2003).  "Direct criminal contempt is a crime against the Commonwealth . . . . a contempt sanction is criminal in nature when the trial court's main purpose is to punish the contemnor for disobedience of the court's order."  *Commonwealth v. Kolansky*, 800 A.2d 937, 939 n.2, 3 (Pa. Super. Ct. 2002).  "Any criminal contempt is a crime in the ordinary sense: it is a violation of the law constituting a public wrong punishable by fine, imprisonment, or both."  *Ashton*, 824 A.2d at 1203.  On at least two occasions, Wheeler was sentenced in the Court of Common Pleas to a period of incarceration for direct criminal contempt.  Mot. Summ. J., Exs. I, J at 34:11-35:8.

There is no merit to Wheeler's argument that he did not have a criminal history because he was never convicted of a crime in a criminal court.  The convictions for direct criminal contempt were convictions for criminal offenses.  Wheeler's 1993 and 1998 criminal convictions were expunged by Order of March 4, 2008.  Resp. Mot. Summ. J., Ex. 9.  Although the expungement was retroactive to March 30, 1999, it did not occur until *after* Wheeler submitted his appeals referee and program manager applications, and *after* he was terminated.  When Wheeler applied to be an appeals referee and program manager, and when he was terminated, Wheeler had a criminal record of at least two convictions of direct criminal contempt.[8]

Even if Wheeler did not provide false and misleading information by listing his bar identification number on his applications and claiming to have no criminal history, he still fails to show the Department's reasons for firing him were pretextual instead of simply incorrect.  *See Fuentes*, 32 F.3d at 765.  "To discredit the employer's proffered reason, however, the

---

[8]The record does not show whether the Department filed the PA Disciplinary Board and PA Commission complaints before or after the Wheeler convictions were expunged.

21

plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.*

The Department investigated Wheeler's employment history to determine whether racial discrimination was a factor in the promotion process.  The Department discovered information causing it to believe Wheeler had submitted false and misleading information concerning his law license and criminal history in his applications.  Wheeler does not offer evidence showing the Department terminated him and filed the PA Disciplinary Board and PA Commission complaints for any other reason.  Wheeler does not offer evidence showing the Department conducted an unusually thorough investigation of his employment history.

Wheeler has not offered evidence creating a triable issue whether the Department terminated him and filed the PA Disciplinary Board and PA Commission complaints for pretextual reasons; the Title VII retaliation claim cannot withstand summary judgment.

## IV.    Conclusion

The Court will grant the Department motion for summary judgment.  An appropriate Order follows.